# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| AFFORDABLE HOME HEALTH CARE, LLC DBA SUMMIT ORTHOPEDIC HOME CARE<br>2760 Airport Drive<br>Building C, Suite 160<br>Columbus, Ohio 43219<br><br>And<br><br>SUMMIT HOME HEALTHCARE, LLC<br>2760 Airport Drive<br>Building C, Suite 160<br>Columbus, Ohio 43219<br><br>      *Plaintiffs*,<br><br>– against –<br><br>GUY W. JONES<br>94 Roberts Drive<br>Heath, Ohio 43056,<br><br>EVOLUTION HOME CARE, LLC<br>C/O Statutory Agent<br>CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>And<br><br>PURPLE RIDER INVESTMENTS, LLC<br>C/O Statutory Agent<br>CT Corporation System<br>4400 Eason Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>      *Defendants*. | Case No. 1:23-cv-00412<br><br>Judge<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |

127735320v4

Plaintiffs Affordable Home Health Care, LLC d/b/a Summit Orthopedic Home Care and Summit Home Healthcare, LLC (collectively, "Summit"), for their Complaint against Defendants Guy W. Jones ("Jones"), Evolution Home Care, LLC ("Evolution") and Purple Rider Investments, LLC ("Purple Rider") (collectively, "Defendants") allege as follows:

## NATURE OF THE ACTION

1. Summit brings this suit for injunctive relief and damages to redress Jones' flagrant violations of legal obligations owing to Summit.

2. On March 6, 2023 , Jones voluntarily terminated his employment as Director of Operations of Summit. Since his resignation and, upon information and belief, before it, Jones has surreptitiously misappropriated confidential information and trade secrets of Summit, and he has solicited Summit's employees, all to compete unfairly with Summit.

3. Jones formed Purple Rider on February 2, 2023 and Evolution on May 12, 2023 to create a home health agency that would compete with Summit. Jones' work with Purple Rider and/or Evolution will inevitably require him to disclose and use Summit's confidential information and trade secrets, absent the injunctive relief sought herein.

4. Jones' violations are causing Summit irreparable harm, including, but not limited to, allowing Jones to misappropriate for his benefit the goodwill, confidential information, trade secrets, and other assets of Summit.

## PARTIES, VENUE, AND JURISDICTION

5. Summit is headquartered at 2760 Airport Drive, Building C, Suite 160, Columbus, Ohio 43219.

6. Jones is an Ohio resident with a home address of 94 Roberts Drive, Heath, Ohio 43056.

7. Purple Rider is an Ohio limited liability company and registered to do business in Ohio.

8. Evolution is an Ohio limited liability company and registered to do business in Ohio.

9. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as well as supplemental jurisdiction under 28 U.S.C. § 1367(a) because Summit's related state-law claims are part of the same case or controversy.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and S.D. Ohio Civ. R. 82.1.

11. The Court has personal jurisdiction over Jones as a resident of Ohio, over Purple Rider and Evolution as Ohio LLCs doing business in Ohio, and because Defendants are causing tortious injury to Summit in Ohio.

## BACKGROUND FACTS

### Summit's Business

12. Summit, through its nurses and therapists, provides in-home specialty care for patients throughout Ohio and parts of Indiana in home health, orthopedics, neurology, infusions, and hospice care.

13. As part of the development of its business, Summit has expended substantial time, labor, and money to research proprietary business methods, strategies, technologies, processes, products, intellectual property, marketing plans and procedures, and other proprietary information on its client preferences, referral sources, contract information, pricing information and methods, development of employees, and other confidential and proprietary information.

14. Summit has taken measures to protect and maintain the secrecy of its confidential business information and trades secrets, including, but not limited to, by restricting access to

such, password protections, as well as maintaining policies prohibiting unauthorized use or disclosure of such information by Summit employees. Summit's confidential business information and trade secrets have independent economic value from not being generally known to or readily ascertainable through proper means by the general public, including Summit's competitors, who could obtain economic value from the disclosure or use of such information.

### Jones' Employment with Summit

15. Jones' experience in the industry comes entirely from his employment with Summit.

16. At first, Jones joined Summit as Director of Sales on October 1, 2020, and he later became Summit's Director of Operations.

17. Jones served as Director of Operations until his resignation from Summit effective March 6, 2023.

18. Summit has long-term business relationships and substantial goodwill in the home health care industry.

19. As part of his job responsibilities with Summit, Jones had access to and knowledge of Summit's confidential information and trade secrets.

20. During his employment with Summit, Jones received substantial compensation from it, including salary, benefits, and bonuses.

### Jones' Contractual Obligations

21. On September 8, 2020, as a condition to his employment with Summit, Jones executed the Agreement attached as Exhibit A.

127735320v4

22. Jones agreed to the following confidentiality protections:

> **2. Confidentiality.** Employee recognizes and acknowledges that the relationship with, and the identity of, customers, referral sources (including, but not limited to, referring physicians), suppliers, licensees, licensors, franchisees, and business relationships of Employer, as such may exist from time to time, are valuable and unique assets. During the course of Employee's employment, he will also learn information about the business practices of Employer, which information would be an advantage if known by the competitors of Employer. Employee therefore agrees that he will not, during or after the conclusion of his employment, communicate or divulge to, or use for his benefit or for the benefit of any person or entity, any information concerning Employer's business practices, or any information obtained by him in the course of his employment pertaining to Employer's customers, referral sources (including, but not limited to, referring physicians), suppliers, licensees, licensors, franchisees and business relationships. Such information is and will remain the exclusive property of Employer and shall hereinafter be referred to as Employer's proprietary information.
>
> At the conclusion of his employment with Employer, Employee will deliver intact, and not destroy, all materials, papers, books, files, documents, programs and all other information he may have concerning Employer and its proprietary information, and he will not retain any such information in any form, nor will he keep or give copies or disclose the contents of such materials to any other persons. This delivery requirement also specifically includes all such information that is maintained through use of electronic means, computer disks, or otherwise. Employee further specifically agrees to deliver all other materials and all other information concerning Employer, its clients, customers and accounts, which is found or recorded on or in papers, computer disks, programs, books, files, etc., owned by Employer
>
> Employee further acknowledges and agrees that all such proprietary information obtained by him during his relationship with Employer is to be treated as a trade secret as that term is defined by Ohio law.

23. Jones agreed to certain restrictions on customers, referral sources, and more:

> **3. Non-Solicitation.** Employee agrees that during his employment, and for a period of one year after his employment concludes, he will not, in his individual capacity or as an employee, independent contractor, principal, agent, or in any other capacity, directly or indirectly contact, solicit, or service any customers, referral sources (including, but not limited to, referring physicians), suppliers, licensees, licensors, franchisees or business relationships of Employer if they were customers, referral sources (including, but not limited to, referring physicians), suppliers, licensees, licensors, franchisees or business relationships of Employer prior to the time Employee's employment concludes.

24. Jones agreed to certain restrictions related to Summit's employees:

> **4. Interference with Employees.** Employee, for himself or any others, directly or indirectly, shall not, for a period of one (1) year after the conclusion of his employment, induce or attempt to induce any employee, agent, or representative of Employer to terminate their employment or relationship with Employer.

127735320v4

25. The restrictions in paragraphs 3, 4, and 5 of the Agreement are necessary to protect Summit's legitimate business interests.

**Jones' Actions**

26. Jones remained a key employee of Summit until his resignation effective March 6, 2023. On information and belief, before resigning, and since resigning, Jones misappropriated confidential information and trade secrets of Summit.

27. Examples of Defendants' misappropriation of Summit's confidential information, and trade secrets have included accessing Summit's confidential business intelligence.

28. Jones' misappropriation of Summit's information has also included attempts to gain computer network access through at least one Summit employee when Jones knew he had no such authorization and they were not authorized to provide him such access.

29. In March 2023, after his termination date, Jones improperly accessed Summit's Google Drive account, where he viewed confidential information and trade secrets of Summit concerning its patient census, admissions, and other volume and discipline information.

30. Jones knew after he resigned from Summit that he no longer had authorized access to its computer systems and networks, including to Summit's Google Drive account. His access had been disabled.

31. Jones' purpose appears to have been to obtain Summit's confidential information and trade secrets in an effort to complete unfairly with Summit. It would require significant time and expense for a competitor to replicate the information Jones misappropriated from Summit.

32. On information and belief, Jones, on his own or through others, has also been contacting Summit's referral sources to have them support his new agency.

127735320v4

33. Jones, on his own and through others, has been contacting Summit's employees to have them come work with him in his new agency.

34. Jones is the President of Purple Rider, which was formed as an Ohio limited liability company on February 3, 2023.

35. Purple Rider, of which Jones is the President, formed a home care company called Evolution, an Ohio limited liability company, on May 12, 2023.

36. Jones' misappropriation of Summit's information and documents described above was to done so he could use Summit's confidential information and trade secrets for the benefit of himself, Purple Rider, and Evolution in competing against Summit. It would take years for a competitor to replicate all the information Jones misappropriated from Summit.

37. Jones' interference with Summit's employees was done for the benefit of himself, Purple Rider, and Evolution in competing against Summit.

38. If Jones is not preliminarily and permanently enjoined from retaining and using the information and documents misappropriated by him, as well as from soliciting Summit's employees, Summit will sustain injuries for which it will never be fully compensated by an award of money damages. The full amount of losses Summit will suffer because of Jones' actions can never be fully calculated.

39. Furthermore, the injury from disclosing confidential information and misappropriation of trade secrets and customer and other goodwill is irreparable.

40. Summit has no adequate remedy at law.

127735320v4

## COUNT I
## JONES: BREACH OF CONTRACT

41. Summit repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

42. The non-solicitation and confidentiality provisions in the Agreement are valid, enforceable obligations necessary to protect Summit's legitimate business interests and prevent unfair competition by its former employees.

43. Summit has complied with all of its obligations under the Agreement.

44. Jones has breached the Agreement.

45. Summit is entitled to preliminary and permanent injunctions against further breaches by Jones.

46. As a direct and proximate result of Jones' breaches of contract, Summit has suffered substantial monetary damages in excess of the jurisdictional minimum of this Court.

## COUNT II
## ALL DEFENDANTS: TRADE SECRET MISAPPOPRIATION UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. §§ 1836(b), 1839)

47. Summit repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

48. Summit is the owner of certain valuable confidential business information and trade secrets, including, but not limited to, project files, customer information, prospective customer information, bid histories, pricing structures, rate calculations/information, corporate records, estimates, active and historical files across Summit's offices, materials for affiliates of Summit, and much more.

49. The aforementioned confidential business information and trade secrets related to services provided by Summit are used in interstate commerce, including in Ohio and Indiana.

127735320v4

50. Summit has taken reasonable steps to protect and maintain the secrecy of its confidential business information and trade secrets, and such information derives independent economic value from not being generally known to or readily ascertainable through proper means by the general public, including Summit's competitors, who could obtain economic value from the disclosure or use of such information.

51. Jones gained access to Summit's confidential business information and trade secrets in the course of an employer-employee relationship with Summit, and he has improperly acquired, retained, and used Summit's confidential business information and trade secrets after his employment.

52. Jones subsequently used, and disclosed to, or used for the benefit of Purple Rider and Evolution, Summit's confidential business information and trade secrets.

53. Defendants willfully and maliciously misappropriated Summit's confidential business information and trade secrets in order to gain economic value from them.

54. As a direct and proximate result of Defendants' current and continued misappropriation of Summit's confidential business information and trade secrets, Summit has suffered and continues to suffer imminent and irreparable harm.

55. Unless enjoined by this Court, Defendants' acts of misappropriation will continue, and Summit will continue to suffer irreparable harm for which it has no adequate remedy at law.

### COUNT III
### ALL DEFENDANTS: MISAPPROPRIATION OF TRADE SECRETS
### (ORC § 1333.61, *ET SEQ.*)

56. Summit repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

57. As part of the development of its business, Summit has expended substantial time, labor, and money to research proprietary business methods, strategies, technologies, processes,

127735320v4

products, intellectual property, marketing plans and procedures, and other proprietary information on its customer and client preferences, contract information, pricing methods, sales, purchasing strategies and methods, purchasing histories, development of employees, referral sources, and customers, and other confidential and proprietary information.

58. Summit has taken substantial measures and exercised due diligence to prevent its business-related documents and information from becoming available to persons other than those selected by it to have access to them.

59. Jones was provided access to confidential and trade secret information during his employment with Summit.

60. Jones improperly accessed certain confidential and trade secret information following his resignation from Summit.

61. Jones has used, or inevitably will use, this trade secret information in performing his duties for his new home health agency.

62. Upon information and belief, Purple Rider has used, or inevitably will use, this trade secret information in performing its duties for its new home health agency.

63. Upon information and belief, Evolution has used, or inevitably will use, this trade secret information in performing its duties as a home health agency.

64. Purple Rider and Evolution knew or had reason to know that Jones would acquire and ultimately acquired for their benefit confidential business information and trade secrets of Summit through improper means, and, upon information and belief, Purple Rider and Evolution have made use of the same without Summit's consent.

65. Defendants' unauthorized disclosure and use of Summit's trade secrets constitute misappropriation of trade secrets under common law and under Ohio's Trade Secrets Act, R.C. §1333.61, *et seq.*

66. Summit has at all times had a protectable business interest in these documents and information, and has taken reasonable steps to protect the secrecy of this information.

67. Defendants have misappropriated Summit's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

68. The misappropriation of trade secrets has proximately caused substantial damage to Summit including, but not limited to, lost profits and loss of goodwill, unjust enrichment, or a reasonable royalty, in an amount to be determined at trial.

69. Unless Defendants are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating Summit's proprietary and trade secret information, Summit will suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law.

70. Summit is entitled to a preliminary and permanent injunction against further use, possession, and disclosure by Defendants of such proprietary and trade secret information, and against any future development or activities that would or could make use of such proprietary and trade secret information.

71. Summit is entitled to punitive damages and attorney's fees for Defendants' willful and malicious misappropriation of Summit's trade secrets. R.C. §§1333.63(B) and 1333.64.

## COUNT V
## ALL DEFENDANTS: UNFAIR COMPETITION

72. Summit repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

73. Defendants are competing, or intend to compete, with Summit.

74. Upon information and belief, Defendants have made a strategic decision to try to maliciously target and hire away Summit employees to gain an unfair advantage. Jones has targeted Summit employees that he is prohibited from working with in an effort to harm Summit and gain an unfair competitive advantage over it.

75. Defendants appear to be using Summit's confidential information to compete with Summit.

76. Defendants' conduct constitutes unfair competition.

77. This unfair competition has been willful, deliberate, and malicious.

78. Defendants have benefitted from their acts of unfair competition.

79. As a direct and proximate result of Defendants' acts of unfair competition, Summit has suffered and continues to suffer damages in an amount that is not now ascertainable in excess of the jurisdictional minimum of this Court, which will be established at trial.

80. Summit will further be irreparably harmed unless this Court enjoins the activities of Defendants.

## COUNT VI
## ALL DEFENDANTS: TORTIOUS INTERFERENCE
## WITH PROSPECTIVE BUSINESS EXPECTANCIES

81. Summit repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

82. Summit has a valid business expectancy that it will continue to reap the benefits of its confidential and proprietary information by continuing to provide service to its customers, patients, and clients, and under its contracts.

127735320v4

83. With knowledge of Summit's valid business expectancies, Defendants have intentionally and maliciously interfered with these expectancies as they relate to certain relationships, including referral sources.

84. Defendants have no privilege or justification to interfere with Summit's valid business expectancies.

85. Defendants have engaged in the conduct complained of in a willful and malicious manner, with an improper motive and through improper means, entitling Summit to an award of punitive damages.

86. As a direct and proximate result of Defendants' acts of tortious interference with Summit's business expectancies, Summit has suffered and continues to suffer damages in an amount that is not now ascertainable, but exceeds the jurisdictional minimum of this Court, and will be established at trial.

87. Defendants will continue their acts of tortious interference with Summit's business expectancies, and Summit will be irreparably harmed thereby unless the Court enjoins such activities.

## COUNT VII
## JONES: VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

88. Summit repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

89. After Jones resigned his employment with Summit, he had no authority to access Summit's computer systems and networks, including Summit's Google Drive account.

90. Jones knew he was not authorized to access Summit's Google Drive account after he resigned.

127735320v4

91. Still, Jones improperly obtained access to Summit's Google Suite account after he resigned from Summit, accessing and reviewing Summit's confidential business information and trade secrets.

92. Jones' access of Summit's Google Drive account after his resignation was intentional.

93. Upon information and belief, Summit has sustained damages of at least $5,000 as a result of Jones' unauthorized access of, and misappropriation of information from, Summit's Google Drive account.

## COUNT VII
## ALL DEFENDANTS: IN THE ALTERNATIVE, CIVIL CONSPIRACY

94. Summit repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

95. Defendants, as described above, maliciously conspired and acted with intent of depriving Summit of its property, confidential information, and trade secrets, intending to damage Summit's business.

96. As a direct and proximate result of the wrongful conduct of Defendants, Summit has suffered and continues to suffer damages in an amount that is not now ascertainable and will be established at trial.

97. Upon information and belief, Defendants will continue to conspire to harm Summit, such that it will be irreparably harmed unless such activities are enjoined by this Court.

127735320v4

WHEREFORE, Summit requests that this Court issue preliminary and permanent injunctions:

1) enjoining Jones for one year from the Court's entry from engaging in any act in violation of the Non-Solicitation obligations of the Agreement, including, but not limited to, directly or indirectly, contacting, soliciting, or servicing any customers, referral sources, and more, as defined by the Agreement;

2) enjoining Jones for one year from the Court's entry from engaging in any act in violation of the non-interference obligations of the Agreement, including, inducing or attempting to induce any employee, agent, or representative of Summit to terminate their employment or relationship with Summit;

3) enjoining Defendants from directly or indirectly disclosing or otherwise using Summit's confidential, proprietary, or trade secret information for the benefit of himself or any third party;

4) directing Jones, Purple Rider, and/or Evolution, as applicable, to return to Summit all documents (both electronic and tangible, including all copies), information, and property belonging to Summit, including all confidential, proprietary or trade secret information, in electronic, documentary, or other tangible or intangible form, that they possess, individually and/or together, including the documents and records Jones has misappropriated;

5) directing Defendants to have no contact, directly or indirectly, with business contacts identified in the misappropriated documents;

127735320v4

    6)    ordering an accounting of all revenue, profits, or any other financial gain attributable to Defendants' unlawful acts as alleged herein; and,

    7)    granting any other relief that the Court finds appropriate.

WHEREFORE, Summit further requests that this Court enter judgment against Defendants as follows:

    1)    in the amount of all actual damages that Summit has been determined at the trial of this action to have sustained;

    2)    for all available statutory damages;

    3)    for available exemplary, punitive, and treble damages;

    4)    for all allowable costs and Summit's attorneys' fees and other litigation costs and expenses to the extent recoverable under applicable law;

    5)    for payment to Summit of all revenue, profits, or any other financial gain attributable to Defendants' unlawful acts as alleged herein; and,

    6)    pre-judgment and post-judgment interest;

    7)    granting any other necessary injunctive relief and any other relief that may be just and proper.

## JURY DEMAND

Summit demands a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ Brian G. Dershaw*
Brian G. Dershaw (0072589)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838
(513) 381-0205 (fax)
bdershaw@taftlaw.com

Lauren A. Kemp (0093436)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, Ohio 43215
(614) 334-6131
(614) 221-2007 (fax)
lkemp@taftlaw.com

*Trial Attorneys for Plaintiffs*

127735320v4

**PRAECIPE FOR SERVICE**

To the Clerk:

Please serve the Summons and copy of this Complaint, on the Defendants at the addresses shown in the caption by certified mail, return receipt requested.

                                                        */s/ Brian G. Dershaw*

127735320v4